Wenyao Yang (SBN 348833)
SHINEVIN & YANG PC
8140 Weirick Road
Corona, CA, 92883
(626) 766-9272
Email: attorney@shinevinyang.com

Qin Li (SBN 349218), NDCA Admission Pending
Concord & Sage PC
1360 Valley Vista Dr, Ste 140
Diamond Bar, CA, 91765
(858)568-1696
Email: liqin@concordsage.com
Attorneys for Plaintiff SEI ROBOTICS CO., LTD.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **SEI ROBOTICS CO., LTD.,**<br><br>Plaintiff,<br><br>v.<br><br>**FERDI YILDIRIM,**<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT FOR:**<br><br>1. Copyright Infringement, 17 U.S.C. § 501;<br>2. Misappropriation of Trade Secrets, 18 U.S.C. § 1836; and<br>3. Knowing Material Misrepresentation, 17 U.S.C. § 512(f).<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, SEI Robotics Co., Ltd. ("SEI" or "Plaintiff"), by and through its undersigned counsel, brings this action against Defendant Ferdi Yıldırım ("Defendant") and alleges as follows:

## INTRODUCTION

1. This action concerns Defendant's copying and public display of Plaintiff's original visual works and Defendant's disclosure and use of specific, nonpublic pre-release product information that Defendant received as a participant in Plaintiff's private, invitation-only product-testing group, subject to express instructions that the materials remain confidential and not be published, and that Defendant then disclosed to the public without authorization.

**2.** Plaintiff develops and commercializes smart hardware products under the Homatics brand and invests substantial resources in engineering, industrial design, product rendering, website design, product planning, and coordinated product launches.

**3.** In June 2026, before Plaintiff had authorized public release of the materials at issue, Defendant published two videos through the YouTube channel "PC Teknik Elektronik" at the following URLs: (a) https://www.youtube.com/watch?v=SgJ_c-ByLzo ("SgJ Video"); and (b) https://www.youtube.com/watch?v=fUIe71lbOxI ("fUIe Video" and, together with the SgJ Video, collectively, "Videos").

**4.** The Videos reproduced and publicly displayed Plaintiff's unreleased product renderings, digital artwork, website graphics and layouts, and other original visual works. They also disclosed specific combinations of unreleased technical and commercial information concerning Plaintiff's forthcoming products. Representative screenshots of the Videos are attached hereto and incorporated herein by reference as **Exhibit A**.

**5.** After Plaintiff requested that Defendant remove the Videos, Defendant acknowledged the dispute but continued to assert a right to publish the materials. Plaintiff then submitted copyright takedown notices to YouTube.

**6.** YouTube removed or disabled access to the Videos. Defendant subsequently submitted a counter notification concerning the Videos, asserted that the imagery consisted of standard public marketing materials, and requested restoration of the Videos.

**7.** Unless restrained, Defendant may restore, repost, or further disseminate Plaintiff's original works and the specific confidential information described below, causing continuing and irreparable harm.

**JURISDICTION**

**8.** This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because Plaintiff asserts claims under the Copyright Act, 17 U.S.C. §§ 101 et seq., including §§ 501 and 512(f), and under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836.

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over any related state-law issues properly presented because they would arise from the same nucleus of operative facts.

**PERSONAL JURISDICTION**

10. Defendant is an individual residing in Bursa, Türkiye, who operates and controls the YouTube channel known as "PC Teknik Elektronik."

11. In his DMCA counter notification, Defendant provided his name, Turkish address, telephone number, and email address and expressly consented, pursuant to 17 U.S.C. § 512(g)(3)(D), to the jurisdiction of the federal district court for a judicial district in which YouTube may be found and agreed to accept service of process from Plaintiff or Plaintiff's agent.

12. YouTube and/or its service-provider affiliate conducts material operations in this District, including in San Bruno, San Mateo County, California. Defendant intentionally used YouTube to distribute the accused content and invoked YouTube's counter-notification process to seek restoration of the Videos.

13. Defendant's consent establishes personal jurisdiction for the copyright dispute identified in the counter notification. The remaining claims arise from the same transactions, evidence, Videos, and course of conduct, and this Court may exercise pendent personal jurisdiction to the fullest extent permitted by law.

**VENUE**

14. Venue is proper under 28 U.S.C. § 1400(a) because Defendant consented to personal jurisdiction in a judicial district in which YouTube may be found and therefore may be found in this District for purposes of the copyright action. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims – including YouTube's processing of the takedown and counter-notification dispute

and the threatened restoration of the Videos – occurred or is being administered in this District.

15.   This action seeks relief under United States copyright law directed in material part to content distributed through a United States service provider; relevant platform records and witnesses are located in or accessible from this District; Defendant expressly accepted this District's jurisdiction; and adjudication here is efficient and consistent with the statutory counter-notification process.

## DIVISIONAL ASSIGNMENT

16.   Under Civil Local Rule 3-2(d), assignment to the San Francisco Division is appropriate because YouTube conducts relevant operations in San Bruno, San Mateo County, and a substantial part of the platform-related events described above arose there.

## EXTRATERRITORIAL APPLICATION OF THE DTSA

17.   The DTSA applies under 18 U.S.C. § 1837(2) because acts in furtherance of the alleged misappropriation occurred in the United States. On information and belief, Defendant caused the accused information to be stored, processed, and made available to viewers through YouTube's United States platform operations and later transmitted a counter notification to YouTube seeking restoration and continued dissemination of the Videos through that platform. Plaintiff will amend this allegation if discovery identifies additional or different United States acts.

## PARTIES

18.   Plaintiff SEI Robotics Co., Ltd. is a company organized under the laws of the People's Republic of China, with its principal place of business in Shenzhen, China.

19.   Plaintiff develops and commercializes smart hardware products, including products marketed under the Homatics brand, and owns or controls rights in original product

renderings, website graphics and layouts, digital artwork, and confidential product-development information.

20. Defendant Ferdi Yıldırım is an individual residing in Türkiye and operates and controls the YouTube channel known as "PC Teknik Elektronik."

**PLAINTIFF'S ORIGINAL WORKS**

21. The original visual works presently known to have been reproduced or displayed in the Videos include the following:

(a) Homatics Box 4K Pro X5 3D render(s) and related visual artwork; accused video: SgJ and/or fUIe; creator/date and ownership basis: Created by Linkun Chen on or about June 11, 2026, as a work made for hire within the scope of employment.

(b) Homatics Box 4K Plus V3 3D render(s); accused video: fUIe; creator/date and ownership basis: Created by Yongjun Huang on or about May 18, 2026, as a work made for hire within the scope of employment.

(c) PicTune Smart Display Frame website graphics and UI layout; accused video: SgJ; creator/date and ownership basis: Created by Chaohui Wang on or about June 15, 2026, as a work made for hire within the scope of employment (excluding incorporated non-original photographic elements).

(d) SODA AI Speaker original render(s); accused video: fUIe; creator/date and ownership basis: Created by Chaohui Wang on or about June 15, 2026, as a work made for hire within the scope of employment.

(e) Homatics AI Bluetooth Headphones original render(s); accused video: SgJ; creator/date and ownership basis: The original visual render was created by Chaohui Wang on or about June 15, 2026, as a work made for hire within the scope of employment.

(f) Homatics MiniBar 600 original graphics and render(s); accused video: SgJ and/or fUIe; creator/date and ownership basis: Created by Chaohui Wang on or about February 28, 2026, as a work made for hire within the scope of employment.

(g)    Homatics pre-release website master layout and graphic arrangement; accused video: SgJ Video and/or fUIe Video; creator/date and ownership basis: Created by Chaohui Wang on or about January 18, 2026, as a work made for hire within the scope of employment. Representative copies of Plaintiff's original visual works are attached hereto as **Exhibit B**.

22.    The copyright claim concerns the protectable visual expression embodied in the foregoing renderings, graphic artwork, website layouts, photography, and separable decorative features. Plaintiff does not claim copyright in ideas, methods of operation, interface functionality, technical specifications as such, or utilitarian product features dictated by function.

23.    The foregoing works were created by employees of Plaintiff acting within the scope of their employment as works made for hire, or by commissioned creators who have validly assigned all exclusive rights to Plaintiff. Plaintiff, a corporate entity organized under the laws of the People's Republic of China, is the sole legal and beneficial owner of the copyrights in these works.

24.    The visual works at issue are not "United States works" within the meaning of 17 U.S.C. § 101. The works were created by nationals or domiciliaries of the People's Republic of China, a treaty party to the Berne Convention. At the time of Defendant's unauthorized use, the specific original works at issue either remained unpublished or, to the extent any prior display constituted publication, were first published outside the United States via Plaintiff's foreign corporate website (www.seirobotics.net) before being voluntarily withdrawn. The works are not registered with the United States Copyright Office. Accordingly, pursuant to 17 U.S.C. § 411(a), United States copyright registration is not a prerequisite to instituting this civil action for infringement.

**PLAINTIFF'S SPECIFIC TRADE SECRETS AND SECRECY MEASURES**

25.    At the time of Defendant's disclosure, Plaintiff possessed specific nonpublic compilations of technical and commercial information concerning unreleased products. The

asserted trade secrets are limited to information that was not then generally known or readily ascertainable through proper means.

26.    The presently identified trade secrets include the following compilations of information as they existed and were maintained in strict secrecy prior to Defendant's unauthorized disclosure: (a) the  then-unreleased combination of the Amlogic S905X5-K platform, Android 16 (64-bit), memory and storage configuration, integrated hands-free speaker, far-field microphones, and VVC (H.266)/AV1 capabilities for the Homatics Box 4K Pro X5; (b) then-unreleased port-selection and physical-layout details for the Box 4K Pro X5 and Box 4K Plus V3; (c) then-unreleased pre-launch website arrangements and product-positioning materials; and (d) the coordinated roadmap, launch sequence, and market positioning revealed by the combination of those materials.

27.    The economic value of these compilations arose from Plaintiff's ability to control the timing and manner of product announcements, preserve first-mover advantages, coordinate marketing, and prevent competitors from adjusting product, sourcing, or pricing plans before launch.

28.    Plaintiff took steps to limit access to its internal design files and pre-launch development materials, maintaining them outside of public-facing channels and restricting initial access to authorized personnel.

29.    Certain selected previews or links were shared with a limited, invitation-only private testing group of approximately twelve members for evaluation and discussion, not for public dissemination. The materials were shared subject to express, repeated instructions that they remain confidential – including directions that testers "keep them private," that the materials were "only for our testers," and that files were "not to be shared outside this group," unless and until Plaintiff authorized release – and at least one prior participant was removed from the group for sharing materials outside it. Participants understood from the group's purpose, the unreleased character of the materials, these express confidentiality instructions, and

surrounding communications that the materials were to remain within the group and could not be published or used for public videos.

30. Defendant received the materials as an authorized participant in the private testing group, under circumstances that made their confidential and limited-use nature clear. Defendant disclosed and used the information beyond the scope of his permission and with knowledge of the confidentiality limitation.

## DEFENDANT'S ACQUISITION, KNOWLEDGE, AND DISCLOSURE

31. On June 26, 2026, Defendant posted a link to the SgJ Video in the private testing group and discussed unreleased specifications and design details concerning Plaintiff's products. Plaintiff's representative did not immediately observe Defendant's post; any delay in responding was inadvertent and did not authorize Defendant to publish, retain, or further disseminate the materials.

32. On June 27, 2026, after learning of the Videos, Tarek Adra, Plaintiff's employee and authorized representative, repeatedly instructed Defendant to remove them and explained that the materials were unreleased and their disclosure had placed him and Plaintiff in serious difficulty. True and correct copies of relevant group communications, consisting specifically of Plaintiff's confidentiality instructions and removal requests, are attached hereto as **Exhibit E**.

33. Defendant refused or delayed removal, asserted that the information had become public, and stated in substance that he had merely shared information. Other group members reminded Defendant that the materials were not public and had been shared subject to instructions not to distribute them.

34. Defendant's own communications, the group context, the pre-release character of the materials, and Plaintiff's repeated removal demands demonstrate that Defendant knew or had reason to know that the materials originated from Plaintiff's private testing group and were not authorized for public dissemination.

35. Defendant's Videos displayed Plaintiff's original works and disclosed the specific unreleased product compilations described above to the public without Plaintiff's consent.

36. Plaintiff's DMCA notices identified both Videos and the original visual works at issue. YouTube subsequently removed or disabled access to the Videos. A true and correct copy of Plaintiff's DMCA takedown notice submitted to YouTube is attached hereto as **Exhibit C**.

37. On July 3, 2026, YouTube transmitted to Plaintiff Defendant's counter notification concerning the Videos. Defendant asserted that the imagery consisted of standard product marketing materials intended for public promotion and that identical images were widely available on official and third-party platforms. A true and correct copy of Defendant's DMCA counter notification is attached hereto as **Exhibit D**.

38. In the same counter notification, Defendant swore under penalty of perjury that he had a good-faith belief that the Videos were removed due to mistake or misidentification and requested restoration.

39. Defendant submitted counter notifications for both the SgJ Video and the fUIe Video, requesting the restoration of both videos.

## HARM

40. Defendant's disclosure deprived Plaintiff of control over the first public presentation of its original works and revealed confidential product information before Plaintiff's planned launch.

41. Once unpublished product information is disclosed publicly, secrecy cannot be fully restored. Continued or renewed dissemination threatens additional competitive, launch, reputational, and enforcement harm.

42. Plaintiff has incurred and continues to incur investigation, preservation, enforcement, and legal costs in response to Defendant's conduct and the threatened restoration of the Videos.

## FIRST CAUSE OF ACTION

### Copyright Infringement — 17 U.S.C. § 501

43. Plaintiff incorporates paragraphs 1 through 42.

44. Plaintiff owns the exclusive rights in the original visual works specifically identified in paragraphs 21 through 24 and the completed work schedule to be filed with this Complaint.

45. Defendant had access to Plaintiff's works and copied protectable visual expression from them into the Videos, including Plaintiff's original renderings, graphic compositions, and website visual layouts.

46. Defendant reproduced, publicly displayed, and distributed those works through YouTube without Plaintiff's authorization, in violation of 17 U.S.C. § 106.

47. Defendant's use was not limited to the functional facts or ideas embodied in Plaintiff's products; the Videos displayed Plaintiff's visual works themselves (further evidenced by the presence of a watermark bearing Plaintiff's representative's name), including substantial and qualitatively important portions of the unreleased works.

48. Plaintiff is entitled to injunctive relief, actual damages and Defendant's attributable profits, and any additional remedies available under the Copyright Act.

## SECOND CAUSE OF ACTION

### Misappropriation of Trade Secrets — 18 U.S.C. § 1836

49. Plaintiff incorporates paragraphs 1 through 48.

50. The specific compilations identified in paragraph 26 constitute trade secrets under 18 U.S.C. § 1839 because Plaintiff took reasonable measures to preserve their secrecy and they derived independent economic value from not being generally known or readily ascertainable through proper means.

51. The trade secrets related to products and services intended for use in interstate and foreign commerce.

**52.** Defendant acquired the information under circumstances giving rise to a duty to maintain secrecy or limit its use, or derived the information from a person whom Defendant knew or had reason to know owed such a duty. Defendant then disclosed and used the trade secrets without Plaintiff's express or implied consent.

**53.** Defendant knew or had reason to know of the confidentiality and limited-use restrictions before and during the disclosure and, at the latest, after Plaintiff's representative and other group members expressly demanded removal.

**54.** Defendant's misappropriation caused actual and threatened irreparable harm. Defendant's misappropriation was willful and malicious: he disclosed the materials to the public knowing they were confidential and unreleased, and refused Plaintiff's repeated demands to remove them. Plaintiff is entitled to appropriate injunctive relief, actual damages, unjust enrichment, a reasonable royalty where applicable, exemplary damages and reasonable attorney's fees under 18 U.S.C. § 1836(b)(3)(C)–(D), and any additional relief available under 18 U.S.C. § 1836(b)(3).

## THIRD CAUSE OF ACTION

### Knowing Material Misrepresentation Under the DMCA — 17 U.S.C. § 512(f)

**55.** Plaintiff incorporates paragraphs 1 through 54.

**56.** In the counter notification concerning the Videos, Defendant represented under penalty of perjury that the material had been removed through mistake or misidentification and asserted that the imagery consisted of standard public marketing materials widely available from official and third-party sources.

**57.** Those representations were materially false as to Plaintiff's original renderings. In particular, Defendant's assertion that the imagery consisted of "standard product marketing materials" that were "widely available" on official and third-party platforms such as Android TV Guide was false. Plaintiff had never authorized the public release of these specific renderings as standard marketing materials. To the extent the renderings appeared

on third-party platforms such as Android TV Guide at the time of the dispute, such publication was strictly unauthorized and derived from the premature leak of confidential information. Before submitting the counter notification, Defendant knew the renderings originated from Plaintiff's private testing group, had been told they were confidential and not authorized for public dissemination, and had received repeated demands to remove the Videos.

**58.** Defendant therefore subjectively knew, or deliberately avoided confirming, that his asserted factual basis for mistake or misidentification was false as to the specific restricted works identified in Plaintiff's notice.

**59.** YouTube relied on the counter notification by initiating the statutory restoration process and requiring Plaintiff to commence legal action to prevent restoration of the Videos.

**60.** As a result, Plaintiff incurred investigation, preservation, and enforcement expenses and other damages recoverable under 17 U.S.C. § 512(f).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and the following relief:

A.   A preliminary and permanent injunction prohibiting Defendant and persons acting in concert with him from reproducing, displaying, distributing, reposting, or otherwise disseminating Plaintiff's identified copyrighted works without authorization;

B.   An injunction prohibiting Defendant and persons acting in concert with him from using or disclosing the specific trade secrets identified in this Complaint, subject to the limitations of 18 U.S.C. § 1836(b)(3);

C.   An order requiring Defendant to preserve all evidence and to return or destroy, as appropriate, Plaintiff's confidential source materials and copies in Defendant's possession, custody, or control;

D.    Actual damages, Defendant's profits attributable to infringement, unjust enrichment, and any other monetary remedies established by the evidence;

E.    Exemplary damages and reasonable attorney's fees to the extent permitted by the DTSA (18 U.S.C. § 1836(b)(3)(C)–(D)) upon a showing of willful and malicious misappropriation, and under 17 U.S.C. § 512(f);

F.    Prejudgment and postjudgment interest; costs of suit; and such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 17, 2026                                    Respectfully submitted,


                                                        /s/ Wenyao Yang
                                                        Wenyao Yang Esq.
                                                        CA Bar No. 348833
                                                        SHINEVIN & YANG PC
                                                        8140 Weirick Road
                                                        Corona, CA, 92883
                                                        (626) 766-9272
                                                        Email: attorney@shinevinyang.com

                                                        /s/ Qin Li
                                                        CA Bar No.349218
                                                        Concord & Sage PC
                                                        1360 Valley Vista Dr, Ste 140
                                                        Diamond Bar, CA, 91765
                                                        (858)568-1696
                                                        Email: liqin@concordsage.com
                                                        *Attorneys for Plaintiff*